UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LAND & DEVELOPMENT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>VRATSINAS CONSTRUCTION COMPANY, an Arkansas corporation; et al.,<br><br>Defendants. | Case No.: 18-CV-1896-AJB-NLS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DIMISS**<br>**(Docs. No. 4, 25).** |

Defendant Vratsinas Construction Company moves to dismiss Plaintiff Thomas Land & Development's complaint, asserting (1) Plaintiff fails to adequately allege standing under Rule 12(b)(1); (2) Plaintiff fails to establish personal jurisdiction over Vratsinas under Rule 12(b)(2); (3) Plaintiff fails to establish proper venue under Rule 12(b)(3); and (4) that Plaintiff has not alleged any facts establishing a plausible claim for relief under its RICO, Sherman Act, and negligence causes of action under Rule 12(b)(6). (Doc. No. 4-1.) A second motion to dismiss made by other VCC entities and the individually named defendants raises nearly identical arguments. (Doc. No. 25.) The Court discusses the arguments raised in the first-filed motion unless otherwise noted.

The crucial missing piece in Plaintiff's complaint is the failure to establish injury in fact by elaborating on Plaintiff's specific role in the projects where alleged fraud was

1

18-CV-1896-AJB-NLS

committed by Vratsinas or providing sufficient detail on how Plaintiff has acquired rights to represent other entities or individuals that may have a claim against defendants in relation to these facts. (Doc. No. 1 at 2 n.1.) Plaintiff does adequately allege Sherman Antitrust Violations and personal jurisdiction against Vratsinas.

However, based on the insufficiencies noted herein, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motions to dismiss. (Docs. No. 4, 25.) However, the Court also **GRANTS** Plaintiff leave to amend.

## I. BACKGROUND

Plaintiff's claims are all based on the assertion that Vratsinas, in collaboration with other named defendants, committed wrongful and collusive business practices which prevented Plaintiff from lawfully obtaining work and directly contributed to Plaintiff's damages. (Doc. No. 1 ¶¶ 1, 3.) These practices were conducted through the establishment of various "schemes" including: a "sham subcontractor scheme", (*id.* ¶ 18); a "pocket subcontractor kickback scheme", (*id.* ¶ 23); an "additional costs manipulation scheme", (*id.* ¶ 30); a "fraudulent insurance scheme", (*id.* ¶ 35); a "fraudulent change order scheme", (*id.* ¶ 41); and a "costs plus to lump sum conversion 'rebate' scheme". (*id.* ¶ 45 (capitalization removed in all).)

The schemes consisted of Vratsinas engaging in bid-rigging when selecting subcontractor bids by concealing the lowest bid from the project owner and replacing it with a "sham subcontractor" bid, which was the lowest bid at an inflated price. (*Id.* ¶¶ 18–22.) Vratsinas would then hire the legitimately lowest bidding subcontractor and retain the difference between their bid and the inflated bid presented to the project owner. Vratsinas would also preselect certain "pocket subcontractors" to assist in this activity by awarding them "kickbacks" for their willingness to misrepresent the actual costs of their labors. (*Id.* ¶¶ 23–29.)

On various projects where Vratsinas and Plaintiff agreed to certain cost allowances for a specific subcontractor's or trade's scope of work (where the expenses were not to exceed the allowance, and any remaining balance would be returned to Plaintiff), Vratsinas

through various methods would fabricate the amount spent within the allowances and retain the difference between the actual amount spent and the inflated amount presented to Plaintiff. (*Id*. ¶¶ 31–34.) Vratsinas would also offer to retain insurance on behalf of the project owner, which the project owner would then pay for on the final accounting of the project. However, Vratsinas would misrepresent the actual cost of the insurance premiums to project owners and retain the difference. (*Id*. ¶¶ 35–40.)

Vratsinas instructed "pocket subcontractors" to submit material charges to "cost plus" projects where material costs were being paid directly by the project owner (in comparison to projects where a "lump sum" was paid upfront), even though those materials were not being used for the project whose owner was paying directly for the materials. Instead, the materials were used on "lump sum" projects, and subsequently added to the "lump sum" project owner's bill as well as to deduct from the allowance provided for their project. This allowed Vratsinas to maximize profits for each individual job. (*Id*. ¶¶ 41–44.) Vratsinas would also suggest that project owners switch from an audited cost plus payment structure to an unaudited lump sum payment structure to make it more difficult for project owners to detect wrongdoing. (*Id*. ¶ 45.)

Plaintiff represents that Vratsinas implemented these schemes into projects, including but not limited to: The Rim Shopping Center in San Antonio, Texas; the Forum on Peachtree Parkway in Peachtree Corners, Georgia; The Forum Carlsbad in Carlsbad, California; and Westside Centre in Huntsville, Alabama. (*Id*. ¶ 2.)

Plaintiff filed his complaint on August 13, 2018. (*Id* at 1.) Plaintiff alleges causes of action against Vratsinas for violations of: (1) Racketeer Influenced and Corrupt Organizations Act; Count I – Violation of 18 U.S.C. section 1962(c); (2) Racketeer and Corrupt Organizations Act; Count II – Violation of 18 U.S.C. section 1962(d); (3) Sherman Antitrust Act; Violation of 15 U.S.C. section 1; (4) Professional Negligence; and (5) Negligence. (*Id*.)

Plaintiff purports to bring this action on behalf of themselves and for all other similarly situated entities who submitted bids as subcontractors, materialmen or vendors

on private projects that were developed, constructed, managed or otherwise controlled by Vratsinas. (*Id.* ¶ 2.) Plaintiff also purports to be the duly authorized Assignee of any and all existing and potential claims, demands, causes of action, lawsuits, rights of action, expenses, legal fees, and/or damages, of any kind or classification, whether in law, equity or otherwise, alleged against the defendants and arising out of any of the projects in which Vratsinas was involved. (*Id.* at n.1.)

In the prayer for relief, Plaintiff requests for an award of compensatory, treble, and punitive damages, as well as prejudgment and post-judgment interest, in an amount to be determined at trial; for an award of the costs, expenses, and attorney's fees incurred in prosecuting this action; and for any other such relief the Court deems proper. (*Id.* at 41.)

## II. LEGAL STANDARDS

### A. Lack of Article III Standing Pursuant to 12(b)(1)

Under Federal Rule of Civil Procedure Rule 12(b)(1), a defendant may seek to dismiss a complaint for lack of jurisdiction over the subject matter. The federal court is one of limited jurisdiction. *See Gould v. Mutual Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 95 (1998). When considering a Rule 12(b)(1) motion to dismiss, the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Thornhill Publishing Co. v. General Telephone & Electronic Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). Plaintiff, as the party seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B. Lack of Personal Jurisdiction Pursuant to 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a claim

for lack of personal jurisdiction over the person. When a "defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When a district court rules on a defendant's motion to dismiss based on only pleadings, the plaintiff only needs to make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Data Disc., Inc. v. Sys. Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1997); *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In other words, the plaintiff only needs to demonstrate facts that, if true, would support jurisdiction over the defendant. *Ballard*, 65 F.3d at 1498. However, the allegations must not be conclusory, but must allege specific acts connecting the defendant with the forum. *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 n.5 (9th Cir. 1980).

### C. Improper Venue Pursuant to 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) provides that a court may dismiss a claim for improper venue. Once venue is challenged, the burden is on the plaintiff to show that venue is properly laid. *Bohara v. Backus Hosp. Medical Benefit Plan*, 390 F. Supp. 2d 957, 960 (C.D. Cal. 2005); *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *King v. Vesco*, 342 F. Supp. 120, 125 (N.D. Cal. 1972). Facts supporting venue may be established through evidence outside of the pleadings, such as affidavits or declarations. *Argueta v. Banco Mexicano*, S.A., 87 F.3d 320, 324 (9th Cir. 1996).

### D. Insufficient Pleadings Pursuant to 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

### III. DISCUSSION

Vratsinas argues the complaint should be dismissed for the following reasons: (1) Plaintiff has no standing, (Doc. No. 4-1 at 7); (2) Plaintiff failed to establish this Court's personal jurisdiction over Vratsinas, (*id.* at 9); (3) Plaintiff failed to establish that the Southern District of California is a proper venue for this action, (*id.* at 10); (4) Plaintiff failed to allege sufficient facts to state its claims, (*id.* at 12). Other VCC Defendants and the individually-named Defendants bring a second motion to dismiss with identical arguments. (Doc. No. 25.) The only difference between the two motions is the personal jurisdiction analysis—discussed separately below. Due to the similarity of the motions, the Court discusses the issues as raised in the first motion to dismiss, (Doc. No. 4).

**A. Plaintiff Has Not Shown Standing to Pursue Its Claims against Vratsinas**

Vratsinas purports that, in violation of Article III, Plaintiff has failed to adequately allege that it suffered an injury in fact traceable to Vratsinas' conduct concerning any particular construction project and therefore this Court should dismiss the Complaint under Rule 12(b)(1). (Doc. No. 14-1 at 7–9.) Plaintiff, as the party invoking federal jurisdiction, is required to establish three elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). First, Plaintiff must show they have suffered an "injury in fact" which is both "concrete and particularized" and "actual or imminent." *Id.* at 560. Second, there must be

a "causal connection" between the injury and conduct of Vratsinas. *Id.* Third, it must be likely that a verdict for Plaintiff will redress that injury. *Id.* An injury is particularized when it "affect[s] the plaintiff in a personal and individual way." (*Id.* at 560 n.1.) This Court finds that Plaintiff has failed to identify how Vratsinas' actions have impacted Plaintiff in such a particular way.

In contrast to Defendant's argument that Plaintiff fails to identify any specific construction projects on which this activity allegedly occurred, (Doc. No. 4-1 at 8), the Court finds that Plaintiff has adequately identified where Defendant's alleged "schemes" were implemented. (Doc. No. 1 ¶ 2.) However, between the four projects Plaintiff identifies, Plaintiff fails to provide enough facts to explain Plaintiff's own involvement and interest in the projects. Plaintiff does not disclose if it served as a subcontractor or owner on any of the listed construction projects. Moreover, the Court finds Plaintiff's position that they are an assignee insufficient.

Plaintiff alleges to be the assignee of "any and all existing and potential claims, demands, causes of action, lawsuits, rights of action, expenses, legal fees, damages," (*id.* ¶ 2 n.1) and brings this claim on behalf of "all other similarly situated entities who submitted bids as contractors, materialmen or vendors," (*id.* ¶ 2), on the identified projects. However, Plaintiff fails to name any assignors or the essential terms of any assignments to support that allegation. *See MAO-MSO Recovery II, LLC v. MSP Recovery, LLC,* No. CV 17-02525, 2017 U.S. Dist. Lexis 193874, at *12 (C.D. Cal. Nov. 2, 2017) (dismissing claims under Rule 12(b)(1) because "the Court is not obliged to accept as true Plaintiffs' legal conclusions that the assignments exist and are valid; Plaintiffs must allege facts sufficient to support these contentions, such as the identity of the [assignees] . . . the details of the assignments, and the essential terms.").

This Court is not disputing the truth of the claims against Vratsinas or the fraudulent activity that may have occurred. However, the complaint needs more clarity regarding how Plaintiff was both involved and harmed in the projects where Vratsinas' alleged "schemes" were implemented. The Court finds that Plaintiff's contention that it "has been deprived of

millions, if not billions, of dollars," (*id.* ¶ 57), is not enough to establish a particularized injury.

Regarding the second element, if Plaintiff can establish their role as assignee or as a project owner of one of the listed projects, the "causal connection" between Vratsinas' alleged behaviors and the injuries they would have caused a project owner would not be at issue. However, without more facts contributing to Plaintiff's role as assignee to those who may have suffered an "injury in fact," or establishing their direct role within the listed projects in which Vratsinas' alleged misconduct occurs, this Court finds that Plaintiff has not adequately pled their standing.

### B. Personal Jurisdiction Allegations

Due process "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "A nonresident defendant must have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Courts apply a three-part test to exercise specific jurisdiction over a non-resident defendant:

> (1) the defendant either "purposefully direct[s]" its activities or "purposefully avails" itself of the benefits afforded by the forum's laws; (2) the claim "arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [ ] comport[s] with fair play and substantial justice, i.e., it [is] reasonable."

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (alterations in original) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). The burden is on the plaintiff to establish the first two prongs. *Axiom Foods*, 874 F.3d at 1068 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). If the plaintiff satisfies the first two prongs, then the defendant must present a "'compelling case' that exercise of jurisdiction would not be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Burger King Corp.*

*v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

### 1. *The Court Has Personal Jurisdiction Over Vratsinas*

Vratsinas purports that Plaintiff has failed to allege facts demonstrating that this Court has either general or specific personal jurisdiction over Vratsinas. (Doc. No. 4-1 at 9–10.) Acknowledging that Plaintiff's argument for general jurisdiction is based on a flawed alter-ego analysis, the Court turns to personal jurisdiction.

First, the Court finds that Vratsinas has purposefully availed itself in California by maintaining offices in California, and specifically in Irvine, California, (Doc. No. 1 ¶ 6); and more specifically through its development of The Forum Carlsbad in Carlsbad, California, (*id.* ¶ 2). Second, Plaintiff's claim at least partially arises out of Vratsinas' California–related activities, again, through its involvement with the construction of The Forum Carlsbad in Carlsbad, California. (*Id.*) Although Vratsinas maintains Plaintiff "fails to allege any facts concerning when and where any particular scheme occurred, much less any facts demonstrating that Vratsinas' purported forum contacts gave rise to any of Thomas' claims," Plaintiff clearly alleged that one of the projects Vratsinas was engaged in was in California. (Doc. No. 4-1 at 16.) Finally, Defendant fails to give any additional reasons—let alone a compelling case—as to why jurisdiction in California would be unreasonable. Thus, the Court finds Plaintiff has established personal jurisdiction over Vratsinas and **DENIES** Vratsinas' motion as to this argument.

### 2. *Plaintiff Fails to Allege Alter-Ego and Thus Does Not Allege Personal Jurisdiction Over Other Defendants*

The VCC, LLC, VCC Global, LLC, VCC Construction Corp., Diversified Construction Materials and Services, LLC, Sam Alley and Ryan McClendon Defendants argue Plaintiff failed "to allege any facts concerning when and where any particular scheme allegedly occurred. . . ." (Doc. No. 25-1 at 15.) Plaintiff alleged the schemes occurred in four places: San Antonio, TX, Peachtree Corners, GA, Carslbad, CA, and Huntsville, AL. (Doc. No. 1 ¶ 2.) Plaintiff rests its personal jurisdiction analysis on its alter ego allegations since if Defendants are alter-egos of Vratsinas, then personal jurisdiction can be imputed

on them and the individual defendants.

Defendants do not specifically argue Plaintiff fails to establish alter ego theory, but rather argue no personal jurisdiction exists generally. (Doc. No. 25-1 at 15.) But Plaintiff's theory is clear from the face of the complaint. "The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). "However, in certain limited circumstances, the veil separating affiliated entities may be pierced to impute liability from one entity to the other." *Ranza*, 793 F.3d at 1071.

To impute jurisdiction under the alter ego test, a plaintiff "must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" *Doe v. Unocal*, 248 F.3d 915, 926 (9th Cir. 2001) (alterations in original) (quoting *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)). The "unity of interest and ownership" prong of this test requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id.* (internal quotation marks omitted).

Here, Plaintiff makes only conclusory allegations and formulaic recitations of the law regarding alter ego. For example, Plaintiff alleges "the ALTER EGO DEFENDANTS . . dominated, influenced, and controlled each other and the officers of one another, as well as the business, property, and affairs of each other." (Doc. No. 1 ¶ 13(a).) Plaintiff fails to allege any of the unity of interest factors Courts consider when assessing the first prong of the alter ego test. *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (citation omitted). As is now well known, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Accordingly, the Court finds Plaintiff failed to establish general or personal jurisdiction over VCC, LLC, VCC Global, LLC, VCC Construction Corp., Diversified Construction Materials and Services, LLC, Sam Alley and Ryan McClendon and thus **GRANTS** their motion to dismiss. (Doc. No. 25.) However, the Court also **GRANTS** Plaintiff leave to amend accordingly.

### C. Venue is Proper

Vratsinas purports that Plaintiff has failed to meet its burden of establishing that venue is proper in the Southern District. (Doc. No. 4-1 at 15–16.) A civil action may be brought where a defendant resides, where "a substantial part of the events . . . giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or any district in which the defendant can be subjected to personal jurisdiction. 28 U.S.C.A. § 1391(b)(1)–(3).

Vratsinas argues that Plaintiff has conceded that venue is not proper as not all the Defendants reside in California and that the Complaint does not allege "any facts that even suggest" that part of the events giving rise to Plaintiff's claim occurred in the Southern District of California. (Doc. No. 4-1 at 16.) Plaintiff responds that venue is proper as a substantial part of Vratsinas' conduct took place in Carlsbad, California, a city within the Southern District of California. (Doc. No. 6 at 19.)

This Court finds that while viewing Plaintiff's facts as true, at least one of the alleged schemes created by Vratsinas was implemented during construction of The Forum Carlsbad in Carlsbad, California. (Doc. No. 1 ¶ 2.) This establishes the Southern District of California as a proper venue for this action. Plaintiff identified four projects where the alleged wrongful business practices of Vratsinas occurred, one of them being The Forum Carlsbad. (*Id.*) Although the other three construction projects are found in other states, (i*d.*), this Court finds that Vratsinas involvement with The Forum meets the requirement of a substantial part of the events having occurred in this judicial district. Moreover, because personal jurisdiction was established, venue is proper under 28 U.S.C.A. § 1391(b)(3).

### D. Plaintiff's Claims against Vratsinas

Vratsinas argues that: (1) the RICO allegation must be dismissed for failure to comply with Federal Rule of Civil Procedure 9(b); (2) the Sherman Act claim fails as a matter of law; and (3) Plaintiff failed to allege both negligence claims.

#### 1. RICO Claims

Vratsinas purports that Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to Plaintiff's first and second cause of action for alleged RICO violations—which Plaintiff has failed to satisfy. (Doc. No. 4-1 at 17.) Accordingly, Vratsinas requests dismissal of the claims.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) provides, in pertinent part: 'In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.' The rule 'requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.'" *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008) (quoting *Lancaster Cnty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)).

Plaintiff's first claim is brought under 18 U.S.C. § 1962(c), which reads: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Plaintiff's first claim is based in part on Vratsinas' alleged commission of mail fraud. (Doc. No. 1 ¶ 52.) Given these are allegations of fraud against Vratsinas, this Court finds that Plaintiff's RICO allegations must comply with 9(b)'s heightened pleading standard. *See State Compensation Insurance Fund v. Capen*, No. SACV 15–1279 AG (CWx), 2015 WL 13322034, at *2 (C.D. Cal. 2015) ("Fraud claims—including UCL and RICO claims that are based on fraud—are subject to heightened pleading requirements under Rule 9(b) of the Federal Rules of Civil

Procedure.").

Plaintiff asserts the Complaint sufficiently differentiates the roles that each defendant plays in the wrongful conduct alleged. (Doc. No. 6 at 22.) However, Plaintiff's frequent use of "ENTITY DEFENDANTS" suggests that every named defendant was involved in nearly every alleged scheme and all collusive practices. This term prevents the Court from being able to distinguish which defendant was engaged in what wrongful conduct, more so if every named defendant was involved, it prevents the Court from understanding how they played a role.

Additionally, although the facts regarding how the alleged schemes operated and could have been applied are comprehensive and provide an understandable explanation of each scheme's process, there is a lack of detail regarding how or when each scheme was applied to the named projects. Therefore, without facts detailing how each defendant, including Vratsinas, was uniquely involved in each scheme, and how and when those schemes were applied to which projects, this Court finds that Plaintiff has not adequately pled their RICO claims under 9(b)'s heightened standard. Thus, these causes of action are **DISMISSED** with leave to amend.

### 2. *Sherman Antitrust Violations*

Vratsinas purports that Plaintiff's third cause of action for alleged violation of Section 1 of the Sherman Act has not been adequately pled since Plaintiff fails to identify that Vratsinas conspired with any other party to unreasonably restrain trade or identify injury beyond Plaintiff itself. (Doc. No. 4-1 at 23.) Accordingly, Vratsinas requests dismissal of the claim under Rule 12(b)(6).

The Sherman Antitrust Act provides, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. "To establish a section 1 violation, Plaintiff must 'prove three elements: (1) an agreement or conspiracy, (2) resulting in an unreasonable restraint of trade, and (3) causing 'antitrust injury.'" *Rickards v. Canine Eye Registration Found.*, 783 F.2d 1329, 1332 (9th Cir. 1986) (quoting

13

*Gough v. Rossmoor Corp.*, 585 F.2d 381, 386 (9th Cir. 1978)). However, economic injury to a competitor does not equal injury to competition. *Cascade Cabinet Co. v. W. Cabinet & Millwork Inc.*, 710 F.2d 1366, 1373 (9th Cir. 1983). In consideration of a violation of antitrust laws, it is injury to the market, not to individuals, that is significant. *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292 (9th Cir. 1983).

Vratsinas contends that Plaintiff has undermined its allegations by suggesting that the unreasonable restraint on trade occurred between Vratsinas and its self-created "ALTER EGO SHAM ENTITIES," and therefore Vratsinas cannot be held liable for conspiracy within its own company. (Doc. No. 4-1 at 19–20.) However, Plaintiff provides facts that allege agreements between Vratsinas and "POCKET SUBCONTRACTORS," described as "legitimate subcontractor[s]" who "were 'in' on this scheme and happy to actively participate in order to be awarded work." (Doc. No. 1 ¶¶ 20, 21.) Therefore, as the "POCKET SUBCONTRACTORS" have been described as businesses independent of Vratsinas, the Court finds that Vratsinas' alleged agreements extend to companies besides its own.

Vratsinas also takes the position that Plaintiff has failed to plead an injury beyond itself and is required to provide facts that Vratsinas' activity had an anticompetitive effect on the market in which the Plaintiff is engaged. (Doc. No. 4-1 at 20.)

Plaintiff provided facts that through the operations of the alleged schemes, Vratsinas has predetermined which subcontractor's bids would be accepted for work on projects, which in turn has a "pernicious anticompetitive affect and served to stifle the free bidding process that should have been in place" for those projects. Although, as the court has addressed, Plaintiff needs to provide more facts into its role within the projects, these facts about alleged manipulation of the subcontractors bidding process create an injury that would affect project owners and alternative subcontractor companies alike, which therefore extends injury beyond Plaintiff, regardless of which role Plaintiff plays. Also, if as suggested by Plaintiff this activity has occurred at all of the listed projects (Doc. No. 1 ¶ 2), this injury extends to at least four states.

Additionally, this Court finds that Plaintiff has provided facts that indicate Vratsinas' alleged activity involved a form of bid-rigging through concealing the lowest bidding subcontractor from the project owner, and instead of displaying a preselected subcontractor as the "winning" bid. (Doc. No. 1 ¶ 19.) Bid-rigging is a per se violation of the Sherman Act. *United States v. Joyce*, 895 F.3d 673, 677 (9th Cir. 2018).

Because this conduct has been previously held to constitute an unfair restraint on free competition, the facts indicate collusion between Vratsinas and outside companies, and the injury extends beyond plaintiff alone, this Court finds that Plaintiff has sufficiently pled their third claim to survive dismissal under Rule 12(b)(6).

### 3. *Plaintiff's Negligence Claims*

Vratsinas purports that Plaintiff's fourth and fifth causes of action for professional negligence and negligence have not been adequately pled. (Doc. No. 4-1 at 21.) Accordingly, Vratsinas requests dismissal of the claims under Rule 12(b)(6).

Under California law, the elements of a negligence cause of action are: (1) the existence of a duty to exercise due care; (2) breach of that duty; (3) causation; and (4) damages. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 959 (S.D. Cal. 2012).

The elements of a claim for professional negligence cause of action are: (1) the duty of the professional to use such skill, prudence and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. *In re Daisy Sys. Corp.*, 97 F.3d 1171, 1175 (9th Cir. 1996).

Vratsinas purports that Plaintiff has only generally alleged that Vratsinas owed it duties of care but has not alleged a specific relationship with Vratsinas giving rise to a duty of care. (Doc. No. 4-1 at 20.)

Plaintiff depicts it was owed a duty as Vratsinas "developed, constructed, managed or otherwise controlled" numerous projects with Plaintiff. (Doc. No. 1 ¶ 2; Doc. No. 6 at

15

27.) Plaintiff further describes that duty within the Complaint's fourth and fifth causes of action. (Doc. No. 1 ¶¶ 74, 78.)

The difficulty with determining the existence of duty for these claims returns to the lack of facts provided on Plaintiff's specific role in the projects constructed by Vratsinas. As previously discussed, Plaintiff's contention that they are an assignee is not currently accepted, and without more facts contributing to Plaintiff's contention, or facts establishing Plaintiff's direct role within the listed projects in which Vratsinas' alleged misconduct occurs, this Court finds that it cannot determine that Plaintiff was owed a duty of care by Vratsinas to support claims of negligence and professional negligence. Therefore, this Court finds that Plaintiff has not adequately pled its Fourth and Fifth Causes of Action for Professional Negligence and Negligence, and the claims will be dismissed under Rule 12(b)(6).

## IV. LEAVE TO AMEND

Courts are urged to grant leave to amend freely when justice so requires. Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted if it appears possible that the plaintiff can correct the complaint's deficiency. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988). Thus, the Court **GRANTS** leave to amend for Plaintiff's to provide more facts regarding:

(1) Plaintiff's role as assignee or personal involvement on one of the listed projects to establish the "causal connection" between Vratsinas' alleged behaviors and themselves for proper standing.

(2) How the Court has general or personal jurisdiction over VCC, LLC, VCC Global, LLC, VCC Construction Corp., Diversified Construction Materials and Services, LLC, Sam Alley and Ryan McClendon whether through alter ego liability or otherwise.

(3) How each defendant was uniquely involved in each scheme, and how and when those schemes were applied to which projects to adequately plead their RICO claims under 9(b)'s heightened standard.

16

18-CV-1896-AJB-NLS

(4) Plaintiff's role as assignee or personal involvement on one of the listed projects constructed by Defendants to establish Plaintiff was owed a duty of care by Defendants to support claims of negligence and professional negligence.

## V. CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Defendants' motions to dismiss. (Docs. No. 4, 25.) The Court finds Plaintiff adequately alleged Sherman Antitrust violations and established personal jurisdiction over Vratsinas. However, the Court finds that Plaintiff has failed to allege standing, this Court's specific jurisdiction over the other Defendants, or adequately plead it's first, second, fourth, and fifth claims. Accordingly, those claims are dismissed. Nevertheless, the Court **GRANTS** Plaintiff leave to amend. The first amended complaint is due by **August 30, 2019**.

**IT IS SO ORDERED.**

Dated: August 14, 2019

Hon. Anthony J. Battaglia
United States District Judge