UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LAND & DEVELOPMENT, LLC,<br><br>                                         Plaintiff,<br><br>v.<br><br>VRATSINAS CONSTRUCTION COMPANY, an Arkansas corporation; et al.,<br><br>                                         Defendants. | Case No.:  18-CV-1896-AJB-NLS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (Doc. No. 45)** |

Currently pending before the Court is Vratsinas Construction Company ("Vratsinas"), VCC, LLC, VCC Global, LLC, VCC Construction Corp., and Diversified Construction Materials and Services, LLC's (collectively, "Defendants") motion to dismiss Plaintiff Thomas Land & Development, LLC's ("Thomas Land") First Amended Complaint. (Doc. No. 45.) Thomas Land opposed Defendants' motion to dismiss. (Doc. No. 47.) Defendants replied. (Doc. No. 51.) For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion and provides Thomas Land **LEAVE TO AMEND**.

I.      **BACKGROUND**

        A.      **The Parties**

        Plaintiff Thomas Land brings claims under the Racketeer Influenced and Corrupt

1

Organizations Act ("RICO") and the Sherman Antitrust Act, and other common law claims, for recovery of damages arising from the alleged unlawful conduct of Defendants on certain private projects on which Thomas Land was allegedly the landowner and developer, Defendant Vratsinas the general contractor, and Defendant Diversified an intermittent subcontractor. (First Amended Complaint ("FAC"), Doc. No. 44 ¶ 2.) These developments ("the Projects") include:

- The Rim Shopping Center in San Antonio, TX (the "Rim Project")
- The Forum on Peachtree Parkway in Peachtree Corners, GA (the "Peachtree Project")
- The Forum Carlsbad in Carlsbad, CA (the "Carlsbad Project")
- Westside Centre in Huntsville, AL (the "Westside Project")
- Prospect Park in Alpharetta, GA (the "Prospect Project")

(FAC ¶ 2(a)-(e).)

Plaintiff Thomas Land is engaged in the business of real estate development, with its principal place of business in Georgia. Thomas Land alleges that for valid consideration, it is "the assignee and rightful holder of all legal claims, rights and remedies, whether arising in law, equity or otherwise, previously held by the [various] related real estate developer entities that contracted with VCC for the development of the above-referenced projects." (*Id.* ¶ 4.)

Defendant Vratsinas Construction Company is an Arkansas corporation and operates as a full-service construction contractor, offering a variety of services including pre-construction services, bidding oversight processes, construction and quality management, and general contracting services. (*Id.* ¶ 5.) Thomas Land alleges that Defendant Vratsinas has offices throughout California, particularly Irvine, California, and regularly conducts business in the state of California. (*Id.*) Thomas Land further contends that the various other Defendant corporations are shell companies of Defendant Vratsinas. (*Id.* ¶ 6.)

Defendant Diversified Construction Materials and Services, LLC is a Nevada corporation, and is in the business of wholesale door supply and distribution of lumber,

2

plywood, and millwork. (*Id.* ¶ 7.) Thomas Land asserts Diversified was actively involved in and formed by Defendant Vratsinas for the purposes of furthering the unlawful schemes and activities at issue in this action. (*Id.* ¶ 7.)

### B.   Plaintiff Thomas Land's Claims

Thomas Land's claims are all based on the assertion that Vratsinas, in collaboration with other named alter-ego defendants, committed wrongful and collusive business practices which prevented Thomas Land from lawfully obtaining work and directly contributed to Thomas Land's damages. These practices were conducted through the establishment of six "schemes" including: a "sham subcontractor scheme" and "bid manipulation scheme," (*id.* ¶¶ 13–19); a "pocket subcontractor kickback scheme," (*id.* ¶¶ 20–27); an "additional costs manipulation scheme," (*id.* ¶¶ 28–32); a "fraudulent insurance scheme," (*id.* ¶¶ 33–37); and a "fraudulent change order scheme," (*id.* ¶¶ 38–40).

The "sham subcontractor scheme" allegedly consisted of Vratsinas engaging in bid-rigging when selecting subcontractor bids by concealing the lowest bid from the project owner and replacing it with a "sham subcontractor" bid, which was the lowest bid at an inflated price. (*Id.* ¶ 13.) Vratsinas would then hire the legitimately lowest bidding subcontractor and retain the difference between their bid and the inflated bid presented to the project owner. (*Id.*) For the "pocket subcontractor kickback scheme," Vratsinas would preselect certain "pocket subcontractors" to assist in this activity by awarding them "kickbacks" for their willingness to misrepresent the actual costs of their labors. (*Id.* ¶¶ 20–27.)

On various projects where Vratsinas and Thomas Land agreed to certain cost allowances for a specific subcontractor's or trade's scope of work (where the expenses were not to exceed the allowance, and any remaining balance would be returned to Thomas Land), Vratsinas through the "additional costs manipulation scheme," would fabricate the amount spent within the allowances and retain the difference between the actual amount spent and the inflated amount presented to Thomas Land. (*Id.* ¶¶ 28–32.)

As for the "fraudulent insurance scheme," Vratsinas would also offer to retain

3

insurance on behalf of the project owner, which the project owner would then pay for on the final accounting of the project. (*Id.* ¶¶ 34–37.) However, Vratsinas would misrepresent the actual cost of the insurance premiums to project owners and retain the difference. (*Id.*)

Lastly, for the "fraudulent change order scheme," Vratsinas instructed "pocket subcontractors" to submit material charges to "cost plus" projects where material costs were being paid directly by the project owner (in comparison to projects where a "lump sum" was paid upfront), even though those materials were not being used for the project whose owner was paying directly for the materials. Instead, the materials were used on "lump sum" projects, and subsequently added to the "lump sum" project owner's bill as well as to deduct from the allowance provided for their project. This allowed Vratsinas to maximize profits for each individual job. (*Id.* ¶¶ 38–40.)

## II.   PROCEDURAL HISTORY

Thomas Land filed the Complaint on August 13, 2018. (Doc. No. 1.) Defendant Vratsinas moved to dismiss the Complaint, asserting (1) Thomas Land failed to adequately allege standing under Rule 12(b)(1); (2) Thomas Land failed to establish personal jurisdiction over Vratsinas under Rule 12(b)(2); (3) Thomas Land failed to establish proper venue under Rule 12(b)(3); and (4) Thomas Land failed to state any facts establishing a plausible claim for relief under its RICO, Sherman Act, and negligence causes of action under Rule 12(b)(6). (Doc. No. 4-1.) In the Court's August 14, 2019 order granting in part and denying in part the motion to dismiss, the Court held: (1) Thomas Land lacked standing because it did not adequately plead "Plaintiff's own involvement and interest in the projects;" (2) the Court had personal jurisdiction over Defendant Vratsinas, but not VCC, LLC, VCC Global, LLC, VCC Construction Corp., Diversified Construction Materials and Services, LLC, Sam Alley, and Ryan McClendon; (3) venue was proper; and (4) Plaintiff stated a claim under the Sherman Antitrust Act. However, the Court dismissed Plaintiff's RICO claims, and professional and common law negligence claims with leave to amend. (Doc. No. 42 at 12–16.)

Defendants again moved to dismiss on September 13, 2019. The motion was

4

1  opposed by Thomas Land, and this order follows.

2  **III.    REQUESTS FOR JUDICIAL NOTICE**

3       Both parties filed requests for judicial notice in conjunction with the motion to

4  dismiss. There are three types of evidence which a court may properly consider on a motion

5  to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The first type

6  is "documents attached to the complaint[.]" *Id.* The second type is evidence that is the

7  proper subject of judicial notice under Federal Rule of Evidence 201. *Id.* The Court may

8  take judicial notice of facts "not subject to reasonable dispute" because they are "generally

9  known within the trial court's territorial jurisdiction; or . . . can be accurately and readily

10  determined from sources whose accuracy cannot reasonably be disputed." Fed. R. Evid.

11  201(b). The third type is "documents not attached to a complaint . . . if no party questions

12  their authenticity and the complaint relies on those documents." *Harris v. Cnty. of Orange*,

13  682 F.3d 1126, 1132 (9th Cir. 2012).

14       **A.    Defendants' Request for Judicial Notice**

15       First, Defendants request judicial notice of various corporate documents related to

16  the various entities at issue. (Doc. No. 45-6.) In reviewing the exhibits and arguments in

17  support of the request, the Court concludes that the exhibits are proper subjects for judicial

18  notice. Specifically, the Court may take judicial notice of Exhibits 1–6, 8, and 14–24, which

19  consist of documents publicly filed with, and available through, the websites maintained

20  by the Wyoming and Georgia Secretaries of State. *See, e.g.*, *DanielsHall v. Nat'l Educ.*

21  *Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of information

22  contained on government website); *Banks v. Consumer Home Mortgage, Inc.*, No. 01–CV–

23  8508 (ILG), 2003 WL 21251584, *6 n.7 (E.D.N.Y. Mar. 28, 2003) ("Plaintiffs submitted

24  a public record on file with the Secretary of State for Georgia, where CHM lists Michael

25  Ashley as the Chief Financial Officer of CHM. This Court can take judicial notice of this

26  official filing by CHM").

27       Next, the Court may take judicial notice of Exhibit 7 because it is a document

28  maintained by, and which may be ordered from, the San Diego Recorder's Office. *See*

*United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and 'reports of administrative bodies.'"); *Soberanis v. Mortg. Elec. Registration Sys., Inc.*, No. 13-CV-1296-H KSC, 2013 WL 4046458, at *1 (S.D. Cal. Aug. 8, 2013) (taking judicial notice of loan modification agreement recorded with the San Diego County Recorder's Office).

Lastly, the Court may also take judicial notice of Exhibits 9–13 and 25–26, which are documents publicly filed in Georgia state court, the United States District Court for the Western District of Texas, and the United States Bankruptcy Court for the Northern District of Georgia. *See, e.g.*, *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of relevant state court proceedings); *Koistra v. Cty. of San Diego*, 310 F. Supp. 3d 1066, 1075 (S.D. Cal. 2018) (taking judicial notice of documents filed in state court action).

As such, Defendants' request for judicial notice is **GRANTED** in its entirety.

## B.   Thomas Land's Request for Judicial Notice

Thomas Land seeks judicial notice of Exhibits A–I, which are corporate documents, filed with various secretaries of state, used for the purpose of establishing that Defendants share common ownership. (Doc. No. 47-1.) As one example, Exhibit A is the Arkansas Secretary of State online corporate information for Vratsinas, identifying the officers of the corporation. (Doc. No. 47-2.) Because Exhibits A–I are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed," the Court **GRANTS** Thomas Land's request for judicial notice. *See Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of official information posted on a governmental website, the accuracy of which was undisputed).

## IV.   LEGAL STANDARD

### A.   Lack of Article III Standing Pursuant to Rule 12(b)(1)

Under Federal Rule of Civil Procedure Rule 12(b)(1), a defendant may seek to dismiss a complaint for lack of jurisdiction over the subject matter. The federal court is one of limited jurisdiction. *See Gould v. Mutual Life Ins. Co. v. New York*, 790 F.2d 769, 774

6

(9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 95 (1998). When considering a Rule 12(b)(1) motion to dismiss, the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Thornhill Publishing Co. v. General Telephone & Electronic Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). Plaintiff, as the party seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

## B.     Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a claim for lack of personal jurisdiction over the person. When a "defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When a district court rules on a defendant's motion to dismiss based on only pleadings, the plaintiff only needs to make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Data Disc., Inc. v. Sys. Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1997); *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In other words, the plaintiff only needs to demonstrate facts that, if true, would support jurisdiction over the defendant. *Ballard*, 65 F.3d at 1498. However, the allegations must not be conclusory, but must allege specific acts connecting the defendant with the forum. *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 n.5 (9th Cir. 1980).

## C.     Insufficient Pleadings Pursuant to 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## V.   DISCUSSION

### A.   Thomas Land Has Not Demonstrated Standing

As their first ground for dismissal, Defendants argue Thomas Land has no standing to pursue this action against Defendants Vratsinas, VCC, LLC, VCC Global, LLC, VCC Construction Corp., and Diversified Construction Materials and Services, LLC. (Doc. No. 45-1 at 14.) Defendants contend Thomas Land's standing rises and falls on whether it is a valid assignee of any claims arising out of the five Projects given that "Thomas Land has never had a business or contractual relationship with Vratsinas, and all of the work on the projects identified in the FAC was completed long before Thomas Land was formed in May 2012." (Doc. No. 45-1 at 15.)

"To establish Article III standing, a plaintiff must demonstrate 'that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that

8

injury.'" *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017) (quoting *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007)). Although an "assignee of a claim has standing to assert the injury in fact suffered by the assignor," *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1291 (9th Cir. 2014) (quoting *Sprint Commc'ns Co., L.P. v. APCC Servs.*, 554 U.S. 269, 286 (2008)), Defendants here contest whether Thomas Land holds a valid assignment of any claims related to the Projects.

In the Court's August 14, 2019 order granting in part, and denying in part Defendants' first motion to dismiss, the Court held Thomas Land did not adequately demonstrate standing because "Plaintiff fails to provide enough facts to explain Plaintiff's own involvement and interest in the projects. Plaintiff does not disclose if it served as a subcontractor or owner on any of the listed construction projects. Moreover, the Court finds Plaintiff's position that they are an assignee insufficient." (Doc. No. 42 at 7.) Specifically, the Court noted "Plaintiff fails to name any assignors or the essential terms of any assignments to support that allegation." (*Id.*)

Now, in its First Amended Complaint, Thomas Land asserts that "[f]or valid consideration, Plaintiff is the assignee and rightful holder of all legal claims, rights and remedies, whether arising in law, equity or otherwise, previously held by the . . . related real estate developer entities that contracted with VCC for the development of the [Projects]." (FAC ¶ 4.) Thomas Land explains its principals previously formed each of the following developer entities for the limited purpose of assuming operational control over each successive developmental phase of each of the Projects:

- The Rim Project: Fourth Quarter Properties 140, LLC; Fourth Quarter Properties 161, LP; Fourth Quarter Properties 162, LP; Fourth Quarter Properties LXI, LP; and Fourth Quarter Properties LXV, LP.
- The Peachtree Project: LA Forum Peachtree I, LLC (f/k/a Fourth Quarter Properties XIX, LLC) and LA Forum Peachtree II, LLC (f/k/a Fourth Quarter Properties 67, LLC).
- The Carlsbad Project: LA Forum Carlsbad, LLC (f/k/a Fourth Quarter Properties XXX, LLC).

9

- The Westside Project: Fourth Quarter Properties XXVII, LLC
- The Prospect Project: Fourth Quarter Properties XLVII, LLC

(FAC ¶ 4.) Thomas Land asserts that "all covenants, duties and obligations owed by Defendants to the developer entities above have inured to the benefit of Plaintiff, and all injuries in fact described below have effectually been incurred by Plaintiff." (*Id.*)

In the instant motion to dismiss, Defendants mount various attacks on the validity of the purported assignments.[1] With respect to the Carlsbad and Peachtree Projects, Defendants argue that the entities that contracted with Vratsinas for the work on these projects were not owned by Thomas Land's principals at the time Thomas Land was first formed in May 2012. (Doc. No. 45-1 at 17.) Therefore, the alleged assignor entities had no rights or claims to validly assign to Thomas Land with respect to these projects when Thomas Land was formed. (*Id.*) For the Westside Project, Defendants argue the alleged assignor of all rights and claims in the Westside Project—Fourth Quarter Properties XXVII, LLC—was dissolved on September 11, 2010. (*Id.*) For the Westside Project, Defendants state that "[ev]ven putting aside the fact that Thomas Enterprises, not Fourth Quarter Properties XXVII, LLC, was the actual contracting entity with Vratsinas for the Westside Project, Thomas Land obviously could not have received a valid and enforceable assignment from a dissolved entity at or after the time of its formation in April 2012." (*Id.* (citation omitted).) Lastly, Defendants provide that the claims related to the Rim and Prospect Projects were released in the 2015 Settlement Agreement between Thomas (the

---

[1] Thomas Land argues that Defendants improperly attached various exhibits to the Declaration of Bradley Davis. (Doc. No. 47 at 10–11.) However, a court may consider evidence beyond the complaint where the defendant's Rule 12(b)(1) motion raises a factual attack on the complaint. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Id.* at 1039. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint . . . . ." *Id.* However, the court does not review extrinsic evidence when considering a facial attack on jurisdiction. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014). Here, Defendants disputes the truth of the allegations of the assignment, making this a matter of a factual attack. Therefore, the exhibits attached to the declaration are appropriate subjects for the Court to consider.

individual) and Vratsinas. (*Id.*)

In light of the foregoing, the Court concludes that Thomas Land has not sufficiently alleged standing. It is true that a plaintiff need only show that the facts alleged, if proved, would confer standing upon it. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003). But "[i]n an action involving an assignment, a court must ensure that the plaintiff-assignee is the real party in interest with regard to the particular claim involved by determining: (1) what has been assigned; and (2) whether a valid assignment has been made." *In re Brooms*, 447 B.R. 258, 265 (9th Cir. 2011) (citing 6A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure § 1545 (3d ed. 2010)). Here, while Thomas Land has at the very least pled the assignor entities, Thomas Land's FAC suffers from the same deficiencies that led to the dismissal of its original Complaint. Thomas Land still has not provided sufficient facts for the Court to evaluate the validity of the assignments. Indeed, "[t]he Court is not obliged to accept as true [Plaintiff's] legal conclusions that the assignments exist and are valid." *MAO-MSO Recovery II, LLC v. Mercury Gen.*, No. CV 17-2557-AB (FFMX), 2017 WL 5086293, at *4 (C.D. Cal. Nov. 2, 2017). Specifically, Thomas Land fails to produce evidence of any contract demonstrating an assignment, any date of the purported assignment, any essential terms of the contract, or any other circumstances surrounding the assignment. *See MVP Asset Mgmt. (USA) LLC v. Vestbirk*, No. 2:10-CV-02483-GEB, 2012 WL 33043, at *3 (E.D. Cal. Jan. 6, 2012) (granting a Rule 12(b)(1) motion for lack of standing even where date and parties to the assignment were alleged); *Yellowstone Poky, LLC v. First Pocatello Assocs., L.P.*, No. 4:16-CV-00316-BLW, 2017 WL 916439, at *4 (D. Idaho Mar. 8, 2017) ("Plaintiff alleges no facts to plausibly suggest that it was assigned rights under the Agreement."). Thus, in the face of the insufficient facts supporting Thomas Land's claim, and Defendants' formidable factual attack on the validity of the assignments, Thomas Land has not shown it has standing to pursue its claims.

## B.    The Court Has Personal Jurisdiction Over Defendants

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis."

11

*Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). The exercise of jurisdiction must satisfy the requirements of both the applicable state long-arm statute and federal due process. *Id.* at 1404–05. California's long-arm statute is coextensive with the limits of due process. Cal. Civ. Proc. § 410.10. Accordingly, the Court need only consider the requirements of due process. *Fed. Deposit Ins. Co. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1441 (9th Cir. 1987).

Due process requires that a nonresident defendant have certain minimum contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This test may be satisfied in one of two ways. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986). If the defendant's contacts with the forum state are substantial or "continuous and systematic," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984)) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)), the court may properly exercise general jurisdiction over the defendant "even if the cause of action is unrelated to the defendant's forum activities," *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977)). Where the defendant's contacts with the forum state will not support the court's exercise of general jurisdiction, "jurisdiction may nonetheless be proper as an assertion of limited [i.e., specific] jurisdiction if there is a strong relationship between the quality of the defendant's forum contacts and the cause of action." *Decker Coal Co.*, 805 F.2d at 839 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

### 1.   The Court has Personal Jurisdiction Over Vratsinas

First, Defendants again claim that there is no personal jurisdiction over Vratsinas. However, the Court already found in its August 14, 2019 order that "Vratsinas has purposefully availed itself in California by maintaining offices in California, and specifically in Irvine, California," and that "Plaintiff's claim at least partially arises out of Vratsinas' California–related activities, again, through its involvement with the construction of The Forum Carlsbad in Carlsbad, California." (Doc. No. 42 at 9.) Now,

12

Defendants attempt to reargue that there is no personal jurisdiction over Vratsinas because Thomas Land does not have a valid assignment for the claims. (Doc. No. 45-1 at 21.) Because the Court has already held that it has personal jurisdiction over Vratsinas, the Court need not address this argument. And even if the Court were inclined to do so, in applying the tests for specific jurisdiction, the underlying constitutional inquiry focuses on a defendant's activities, not a plaintiff's contacts with the defendant or the forum. *See Walden v. Fiore*, 571 U.S. 277, 287 (2014). As such, the Court's conclusion that it has jurisdiction over Vratsinas stands.

### 2.     The Court Has Personal Jurisdiction Over the Other Defendants

Second, Defendants move to dismiss Defendants VCC, LLC, VCC Global, LLC, VCC Construction Corp., and Diversified for lack of personal jurisdiction. Thomas Land argues the Court has personal jurisdiction over these Defendants because they have perpetuated fraud within California, and in any event, they are the alter-egos of Defendant Vratsinas. Defendants disagree, and instead contend Thomas Land has only offered conclusory allegations that these Defendants are shells of Vratsinas. (Doc. No. 45-1 at 19.)

It is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes. *Transure, Inc. v. Marsh and McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir. 1985). Two exceptions to that general rule exist, however—a subsidiary's contacts may be imputed to the parent where the subsidiary is the parent's alter ego, or where the subsidiary acts as the general agent of the parent. *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405–06 (9th Cir.1994). To satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996).

In the FAC, Thomas Land adequately alleges specific facts demonstrating a unity of interest and ownership: Defendants share common ownership by the same individuals,

13

employees, business addresses, and operational functions. (FAC ¶ 8(a).) As one example, Thomas Land asserts that incoming business telephone calls made to certain of the Defendants "were in actuality fielded by Vratsinas Construction Company employees working at the Irvine corporate location. These employees were trained to answer the calls as if they were independent employees of the other Defendants to falsely portray that they were entirely separate companies." (*Id.*) Additionally, Thomas Land alleges that while Defendant Vratsinas appears to have nominally entered into the prime contracts for the Projects, "various addenda, work and change orders, subcontracts and vendor contracts were entered into by other 'VCC' defendant entities. Most prominently, such project documents were generally signed by 'VCC,' corroborating the alter ego relationship of the VCC Defendants, and confirming the conclusion that these defendants normally used the acronym 'VCC' loosely to refer to all interrelated VCC entities." (FAC ¶ 8(b).) Thomas Land additionally alleges that failure to disregard their separate identities would result in fraud or injustice because the creation of these shell companies produced a "façade of separately owned and operated contracting entities to facilitate perpetration of the fraudulent schemes." (FAC ¶ 8(b).) Accordingly, the Court concludes there is personal jurisdiction over these other Defendants.

### C. Thomas Land's RICO Claims Are Dismissed With Leave to Amend

Next, Defendants urge the Court to dismiss Thomas Land's first and second claims of relief under RICO for noncompliance with Rule 9(b)'s heightened pleading requirements. (Doc. No. 45-1 at 22.) "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate act') (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation marks and citation omitted). Additionally, courts have held that Rule 9(b) applies to RICO claims. *See State Compensation Insurance Fund v. Capen*, No. SACV 15–1279 AG (CWx), 2015 WL 13322034, at *2 (C.D. Cal. 2015). "Rule 9(b) provides, in pertinent part: 'In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall

be stated with particularity.' The rule 'requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.'" *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008) (quoting *Lancaster Cnty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)).

Here, the Court concludes Thomas Land has met most, but not all, of the pleading requirements set forth in Rule 9(b). This time around, Thomas Land has sufficiently explained the role of each defendant in light of the alter ego allegations. But while the facts regarding how the alleged schemes operated is thorough and complete, there is still a lack of facts regarding how or when each scheme was applied to the named projects specified in the Complaint. Indeed, the allegations do not include any description regarding the timeline of the alleged schemes. *See Mostowfi*, 269 F. App'x at 624 ("Likewise, several predicate acts allege violations of federal criminal statutes but do not specify who committed the violation, and when and where it occurred."). Because Thomas Land has failed to adequately plead a civil RICO claim under Section 1962(c), its claim under Section 1962(d) for conspiracy to violate RICO also fails. Accordingly, the Court allows Thomas Land leave to amend to address these deficiencies.

## D.   Thomas Land's Sherman Act Claim Survives Dismissal

Defendants again move to dismiss Thomas Land's third claim for relief under Section 1 of the Sherman Act. (Doc. No. 45-1 at 24.) However, because the Court has already addressed this claim, and held that it survives Rule 12(b)(6) dismissal in its August 14, 2019 order, the Court will not revisit Defendants' arguments. Defendants' motion to dismiss this claim is **DENIED**. *See* Fed. R. Civ. P. 12(g) ("If a party makes a Rule 12(b)(6) motion for failure to state a claim, but omits a defense or objection then available, the party may not raise that defense or objection in a subsequent Rule 12(b)(6) motion.").

## E.   Negligence

Finally, Defendants move to dismiss the fourth and fifth causes of action for negligence and professional negligence. (Doc. No. 45-1 at 27.) "Under California law, the

18-CV-1896-AJB-NLS

elements of a negligence cause of action are: (1) the existence of a duty to exercise due care; (2) breach of that duty; (3) causation; and (4) damages." *In re Sony Gaming Networks & Consumer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 959 (S.D. Cal. 2012). A professional negligence claim requires the same showing, but the duty of care is replaced with "the duty of the professional to use such skill, prudence and diligence as other members of his profession commonly possess and exercise . . . ." *See Jackson v. Johnson*, 5 Cal. App. 4th 1350, 1355 (1992).

Defendants claim that Thomas Land does not even attempt to allege a specific relationship with each of the Defendants giving rise to a duty of care on any particular project. (Doc. No. 45-1 at 27.) Thomas Land, however, rebuts that it has alleged a specific relationship with Defendants in that "'VCC was the general contractor, and DIVERSIFIED an intermittent subcontractor,' and the other Defendants are alter ego sham entities. (FAC, ¶¶2 and 8.) The relationship between Plaintiff and Defendants extended over numerous years and multiple development projects. (FAC, ¶3.)" (Doc. No. 47 at 25.) But in light of the Court's finding that Thomas Land has not established a valid assignment of the claims, the FAC is still ambiguous as to Thomas Land's exact role in the specified projects. With this ambiguity, the Court cannot determine at this time whether Defendants owed a duty of care to Thomas Land to maintain its negligence and professional negligence claims. As such, these claims are **DISMISSED WITH LEAVE TO AMEND**.

## VI.   CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss. However, the Court will provide Thomas Land one additional opportunity to address the deficiencies stated herein. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) ("Leave to amend should be granted if it appears

//
//
//
//

16

possible that the plaintiff can correct the complaint's deficiency."). Thomas Land must file a Second Amended Complaint consistent with this Order by **July 27, 2020**.

     **IT IS SO ORDERED.**

Dated: July 6, 2020

Hon. Anthony J. Battaglia
United States District Judge

18-CV-1896-AJB-NLS